UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., <br><br> Plaintiff, <br><br> - vs - <br><br> S H MAKANI ENTERPRISE, INC., d/b/a ANTILLA SMOKE SHOP & LOUNGE and VICTORIA CASTELLANOS, a/k/a VICTORIA KEELEY, <br><br> Defendants. | CASE NO.: 4:16-cv-00868-O |

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS AND SUPPORTING BRIEF**

Plaintiff, Joe Hand Promotions, Inc., by and through its attorney, files this its Motion for Final Default Judgment against Defendants, S H MAKANI ENTERPRISE, INC., d/b/a ANTILLA SMOKE SHOP & LOUNGE and VICTORIA CASTELLANOS, a/k/a VICTORIA KEELEY and Supporting Brief ("Motion"), which is supported by the following brief and the accompanying Appendix.

**TABLE OF CONTENTS**

A.    NATURE AND STAGE OF THE PROCEEDING................................................ 6

B.    STATEMENT OF THE ISSUES AND SUMMARY OF THE ARGUMENT.................. 6

C.    UNDISPUTED EVIDENCE ....................................................................... 7

D.    UNDISPUTED FACTS ............................................................................ 9

E.    ARGUMENTS & AUTHORITIES .............................................................. 10

   1.   THE COMMUNICATIONS ACT .............................................................. 10
   2.   STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II) ......................... 12
   3.   DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii) ................... 18

F.   ATTORNEY'S FEES AND COSTS............................................................. 21

G.   CONCLUSION.................................................................................... 21

H.   PRAYER ........................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*American Television and Communications Corp. v. Floken, Ltd.*, 629 F.Supp. 1462, 1466 (M.D.Fla. 1986) ................................................................................................... 15

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F.Supp. 1522, 1544 (S.D.N.Y. 1991). .......... 15

*Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990) ................................................................................................... 12, 20

*Cox Cable Cleveland Area, Inc. v. King*, 582 F.Supp. 376, 381 (E.D.Ohio 1983) .................... 16

*Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F.Supp.2d 769, 773, 776, 777 (S.D.Tex. 2002) ……………………………………………………………………… 14, 20

*Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.,* Civil Action No. H-01-2514, 2002 U.S. Dist. LEXIS 16247, at *17 (S.D.Tex. July 24, 2002)……………………………………… 12

*Entertainment by J&J, Inc. v. Tia Maria Mexican Restaurant & Cantina, Inc.*, 97 F.Supp.2d 775, 778-779 (S.D.Tex. 2000)(Gilmore, V.) ……………………………………………………21

*Fallici v. New Gazette Literary Corp.*, 568 F.Supp. 1172, 1174 (S.D.N.Y. 1983) …………… 20

*Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992)(citations omitted) ………………………12

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952)........................ 13, 14

*J&J Sports Productions, Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 352-53 (5th Cir. 2014) ................................................................................................... 10

*J&J Sports Productions, Inc. v. Papagallos 1, Inc.,* Civil Action No. A-08-CA-691-SS (W.D.Tex. April 17, 2009)(Sparks, S.).................................................................... 20

*Joe Hand Promotions, Inc. v. Malespin,* 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001)(Nathaniel, K.) .................................................................................................... 19

*Joe Hand Promotions, Inc. v. Macias,* Cause No. 4:11-cv-01773 (Memorandum and Order)(S.D.Tex., March 19, 2012)(Atlas, N.) ....................................................................... 10

*KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F.Supp.2d 438, 442 (S.D.N.Y. 2001).. 11, 19

*KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999)................ 10

*KingVision Pay-Per-View, Ltd. v. Scott E.'s Pub, Inc.*, 146 F.Supp.2d 955, 959-60 (E.D.Wis. 2001) ........................................................................................................................................... 21

*KingVision Pay-Per-View, Ltd. v. Valles,* EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D.Tex. March 30, 2001)(Briones, D.)................................................................................ 19

*Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981).. 13, 20

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978) ......... 13

*Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975) ........................... 9

*ON/TV of Chicago v. Julien*, 763 F.2d 839, 843 (7th Cir. 1985)........................................... 15, 18

*ProStar v. Massachi*, 239 F.3d 669, 675 (5th Cir. 2001)............................................................. 21

*Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F.Supp. 1159, 1161 (D. Ma. 1986)............. 16

*Subscription Television of Greater Washington v. Kaufman*, 606 F.Supp. 1540, 1544 (D.D.C. 1985) ........................................................................................................................................... 15

*Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999) .. 11, 19

4

*TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985) ................................................ 18

*United States v. Scott*, 783 F.Supp. 280, 281 (N.D. Miss. 1992) ........................................ 7, 12, 15

**STATUTES**

17 U.S.C. §504(c)(1) ……………………………………………………………………… 14

47 U.S.C § 553  ………………………………………………………………………… 6, 10

47 U.S.C. § 605 …………………………………………………………...…………… 6, 7, 10, 12

47 U.S.C § 605(e)(4) …………………………………………………………………...7

47 U.S.C. § 605(e)(3)(C)(i)(II) …………………………………………...……………2, 12, 13, 22

47 U.S.C. § 605(e)(3)(C)(ii) …………………………………………………………2, 18, 21, 22

47 U.S.C. §§ 605(e)(3)(B)(iii) …………………………………………………………...21

*Copyright Act of 1976*, 17 U.S.C. § 101 ……………………………..………………… 14

*Federal Communications Act of 1934, as amended* ………………2, 6, 8, 10, 12, 13, 14, 20, 22

### PLAINTIFF, JOE HAND PROMOTIONS, INC.'S MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS AND SUPPORTING BRIEF

## A. NATURE AND STAGE OF THE PROCEEDING

1.      On September 19, 2016, Plaintiff, Joe Hand Promotions, Inc. (hereinafter "Plaintiff" or "JHP") filed its Complaint [*See* Doc. No. 1] against Defendants, S H MAKANI ENTERPRISE, INC., d/b/a ANTILLA SMOKE SHOP & LOUNGE and VICTORIA CASTELLANOS, a/k/a VICTORIA KEELEY (hereinafter referred to as "Defendants") complaining of the unauthorized and illegal receipt and exhibition of the *Miguel Cotto v. Canelo Alvarez* Broadcast, including all undercard bouts and the entire television broadcast, scheduled for November 21, 2015 (hereinafter "Event"), at the establishment known as Antilla Smoke Shop & Lounge located at 3261 N. Beach Street, Fort Worth, Texas (hereinafter "Establishment"), a commercial business, without paying the sublicense fee to Plaintiff.

2.      On April 25, 2017, default was entered against Defendants.  *See* Doc. No. 20.

3.      JHP hereby seeks the entry of a final default judgment against Defendants for statutory damages under the Federal Communications Act of 1934, as amended.

## B. STATEMENT OF THE ISSUES AND SUMMARY OF THE ARGUMENT

4.      This is an "Anti-Piracy" case under the Federal Communications Act of 1934, as amended (the "Communications Act").  The Communications Act protects against the piracy of radio and television signals.  *See* 47 U.S.C. §§ 553[1] and 605.[2]

---

[1] 47 U.S.C. § 553 provides, *inter alia*, that:
No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

[2] 47 U.S.C. § 605 provides, *inter alia*, that:

5.      "In general, 'piracy' refers to the decoding or decryption of scrambled programming without the authorization of the programmer nor payment for the programming." *U.S. v. Scott*, 783 F.Supp. 280, 281 (N.D.Miss. 1992)(reviewing the legislative history of § 605(e)(4)).

6.      By virtue of their default, Defendants have admitted to committing piracy against Plaintiff.

7.      The well plead facts in Plaintiff's Complaint that Defendants illegally intercepted the close-circuit telecast of the Event and exhibited the Event in Defendants' Establishment willfully and for purposes of direct or indirect commercial advantage or private financial gain without authorization from Plaintiff are admitted [*See* Doc. No. 1].  Therefore, liability has been established as a matter of law by default.

8.      In this Motion, Plaintiff seeks statutory damages under 47 U.S.C. § 605, including interest, costs, and attorney's fees as is more fully shown herein.

## C.  UNDISPUTED EVIDENCE

9.      In addition to the admissions in Plaintiff's Complaint [*See* Doc. No. 1], with this Motion, Plaintiff files its Appendix in Support of Plaintiff, Joe Hand Promotions, Inc.'s Motion for Final Default Judgment against Defendants and Supporting Brief [*See* Appendix Page Nos. 1-3], which provides the following evidence to support a Final Default Judgment against Defendants:

---

. . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Exhibit A:  Attached to the Appendix as **Exhibit A** and incorporated by reference is a certified copy of the Texas Limited Sales, Excise, and Use Tax Permit inquiry for the subject Establishment from the Texas Comptroller of Public Accounts (taxpayer number redacted) and Certificate of Amendment, Texas Franchise Tax Public Information Report for Report Year 2015, and Texas Franchise Tax Public Information Report for Report Year 2016 for Defendant, S H Makani Enterprise, Inc. (taxpayer number redacted) from the Texas Secretary of State.  *See* Appendix, Exhibit A, Appendix Page Nos. 4-9.

Exhibit B: Attached to the Appendix as **Exhibit B** and incorporated by reference is the Affidavit of Joe Hand, Jr., President of Plaintiff, Joe Hand Promotions, Inc., forming the basis for an award of statutory damages under the Communications Act.  *See* Appendix, Exhibit B, Appendix Page Nos. 10-16.  Additionally, the Affidavit includes the following exhibits:

1. A true and correct copy of the Closed Circuit Television Distribution Agreement (redacted) between Plaintiff and the promoters of the Event, providing Plaintiff with the exclusive right to license the exhibition of the Event to commercial establishments such as Defendants' Establishment, attached to the Appendix as **Exhibit B(1)** and incorporated by reference (*See* Appendix, Exhibit B(1), Appendix Page Nos. 17-30);

2. A true and correct copy of the Rate Card for the Event, attached to the Appendix as **Exhibit B(2)** and incorporated by reference (*See* Appendix, Exhibit B(2), Appendix Page No. 31); and

3. A true and correct copy of the Affidavit of Myles Ortiz ("Plaintiff's Auditor"), an eye-witness, who entered Defendants' Establishment on the night of the Event and observed the Event being exhibited on a large projection screen, counting approximately 6 people in the Establishment at that time, attached to the Appendix as **Exhibit B(3)** and incorporated by reference (*See* Appendix, Exhibit B(3), Appendix Page Nos. 32-39).

Exhibit C:  Attached to the Appendix as **Exhibit C** and incorporated by reference is the Affidavit for Attorney's Fees and Costs.  *See* Appendix, Exhibit C, Appendix Page Nos. 40-43.  Additionally, the Affidavit includes the following exhibit:

1. True and correct copies of the service of process invoices, attached to the Appendix as **Exhibit C(1)** and incorporated by reference (*See* Appendix, Exhibit C(1), Appendix Page Nos. 44-45).

## D.  UNDISPUTED FACTS

10.     Pursuant to Plaintiff's Complaint[3] and the evidence presented, the following facts are established as a matter of law by default:

a.  Defendants operated the Establishment on the night of the Event. *See* Plaintiff's Complaint, Doc. No. 1 at ¶¶ 2-3 and Appendix, Exhibit A, Appendix Page Nos. 4-9.

b.  Plaintiff is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events. *See* Appendix, Exhibit B at ¶ 4, Appendix Page No. 11.

c.  Plaintiff possessed the proprietary rights to exhibit and sublicense the right to exhibit the Event. *See Id.* and Appendix, Exhibit B(1), Appendix Page Nos. 17-30.

d.  Through an agreement with the promoters of the Event, Plaintiff was licensed to exhibit the Event at closed circuit locations such as racetracks, bars, nightclubs, restaurants, and other commercial establishments throughout the State of Texas. *See* Plaintiff's Complaint, Doc. No. 1 at ¶¶ 7-9, Appendix, Exhibit B at ¶ 4, Appendix Page No. 11, and Appendix, Exhibit B(1), Appendix Page Nos. 17-30.

e.  In Texas, the Event was legally available to commercial establishments only through an agreement with Plaintiff.  *See* Appendix, Exhibit B at ¶ 4, Appendix Page No. 11 and Appendix, Exhibit B(1), Appendix Page Nos. 17-30.

f.  In order to safeguard against the unauthorized interception or receipt of the Event, the interstate satellite transmission of the Event was electronically coded or scrambled and was not available to or intended for the use of the general public. If a commercial establishment was authorized by Plaintiff to receive the Event, Plaintiff authorized the receipt of the signal(s) or authorized the establishment's cable or satellite provider to release the Event to the establishment, depending upon the establishment's equipment and provider. *See* Appendix, Exhibit B at ¶¶ 4-6, 8, 10, Appendix Page Nos. 11-13.

g.  Authorized commercial establishments which contracted with Plaintiff were required to pay to Plaintiff a sublicense fee to receive the Event. This sublicense fee is based on the fire code occupancy of the establishment. Here, the Establishment had an approximate occupancy of thirty-five (35) people.  According to the Rate Card, the fee for a legal broadcast would have been $2,200.00.  *See* Appendix, Exhibit B at ¶ 8, Appendix Page No. 12, Appendix, Exhibit B(2), Appendix Page No. 31, and Appendix, Exhibit B(3), Appendix Page Nos. 32-39.

---

[3] By Defendants' default, the Court should accept the well pleaded allegations of facts in the Complaint. *See* e.g., *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975).

h.  On the night of the Event, Plaintiff's Auditor, an eye-witness, entered the Antilla Smoke Shop & Lounge establishment located at 3261 N. Beach Street, Fort Worth, Texas on November 21, 2015 and observed the Event being broadcast on a large projection screen, counting approximately 6 people in the Establishment at that time. *See* Appendix, Exhibit B at ¶ 9, Appendix Page Nos. 12-13 and Appendix, Exhibit B(3), Appendix Page Nos. 32-39.

i.  Defendants could not have obtained the transmission of the Event had Defendants not undertaken specific wrongful actions to intercept, receive and exhibit the telecast of the Event. *See* Appendix, Exhibit B at ¶¶ 10-11, Appendix Page Nos. 13-14.

## E.  ARGUMENTS & AUTHORITIES

### 1.  THE COMMUNICATIONS ACT

11.     The unauthorized interception and broadcast of cable or satellite transmissions violates 47 U.S.C. §§ 553 or 605.  Section 553 covers the interception or receipt of cable communications (communications traveling over cable wire) and Section 605 covers the interception or receipt of radio communications (communications traveling through the air).[4] Accordingly, unlawful interception, receipt, and broadcast of the signal of the Event are violations of the Communications Act.

12.     "The FCA is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission." *See* Cause No. 4:11-cv-01773; *Joe Hand Promotions, Inc. v. Macias* (Memorandum and Order)(S.D.Tex., March 19, 2012)(Atlas, N.)(referencing *KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999)(the finding that bar had, without authorization, shown a preliminary bout required judgment in favor of the plaintiff)).

---

[4] *See J&J Sports Productions, Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 352-53 (5th Cir. 2014).

13.     On the night of the Event, Defendants owned and operated the Establishment; the Event was exhibited at the Establishment without authorization or payment to Plaintiff, the exclusive holder of the commercial license.  *See* Doc. No. 1 at ¶¶ 2-3, Appendix, Exhibit A, Appendix Page Nos. 4-9, Appendix, Exhibit B at ¶¶ 4-7, 9-10, Appendix Page Nos. 11-13, Appendix, Exhibit B(1), Appendix Page Nos. 17-30 , and Appendix, Exhibit B(3), Appendix Page Nos. 32-39.

14.     In order for an unauthorized commercial establishment to receive a broadcast such as the Event, there must be some wrongful action such as using an unauthorized decoder, obtaining cable or satellite service and illegally altering the cable or satellite service to bring the signal of the Event into the Establishment or moving an unauthorized decoder or satellite card from its authorized location to the Establishment. *See* Appendix, Exhibit B at ¶¶ 10-12, Appendix Page Nos. 13-14; *See also*, e.g., *KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F.Supp.2d 438, 442 (S.D.N.Y. 2001)("In order to access the telecast, it would have been necessary to use an unauthorized decoder, to illegally divert cable service or improperly relocate an authorized decoder" ... "In any of these scenarios, the illegality of the action would have been apparent to the perpetrator"); and *Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999)(when finding willfulness the court stated, "There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").

11

15.     Defendants' default alone establishes liability as ". . . . conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5ᵗʰ Cir. 1992)(citations omitted).

16.     Given the above, it is clear that Plaintiff has met its burden with respect to liability in this matter.

17.     In this Motion, Plaintiff submits evidence to support damages under the Communications Act, specifically seeking damages under 47 U.S.C. § 605.

18.     In 1988, in an effort to further deter piracy, Congress amended the Communications Act to provide for more severe penalties for violations.  "The Committee wants to give both prosecutors and civil plaintiffs the legal tools they need to bring piracy under control. The Committee commends and encourages inter-industry efforts to deal with piracy, and believes the new remedies and increased penalties adopted through this provision will contribute to these important efforts." *See U.S. v. Scott*, 783 F.Supp. 280, 282 (N.D.Miss. 1992)(referencing 1988 *U.S. Code Cong. & Admin. News* 5577, 5657-58).

2.     STATUTORY DAMAGES UNDER 47 U.S.C. § 605(E)(3)(C)(I)(II)

19.     As its first basis for relief, Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).  *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990).[5]

---

[5] It is in the Plaintiff's discretion whether to elect to receive actual or statutory damages. *Id. See also*, *Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.*, Civil Action No. H-01-2514, 2002 U.S. Dist. LEXIS 16247, at *17 (S.D. Tex. July 24, 2002)("A majority of the courts that have dealt with a violation of both sections of the FCA award damages only under Section 605....")(citations omitted).

20.     Pursuant to the Communications Act, the amount of statutory damages to which Plaintiff is entitled for each violation shall be not less than $1,000.00 and not more than $10,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II).  For the reasons set forth herein, Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) against Defendants in the amount of $10,000.00 for Defendants' violation of the Communications Act in connection with the Event.

21.     Statutory damages are appropriate where actual damages are difficult to prove. *See Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F.Supp. 730, 732 (S.D.N.Y. 1981); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978). The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations.  *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

22.     As stated above, and supported by the evidence attached hereto, on the date of the Event, Defendants or Defendants' agents, servants, and/or employees intercepted and received or assisted in the interception and receipt of the live telecast of the Event, broadcasted or assisted in the broadcast of the Event to the patrons at Defendants' Establishment, and broadcasted the Event to the patrons at Defendants' Establishment without paying any sublicense fees to Plaintiff. *See* Doc. No. 1 at ¶¶ 2-3, 7-14, 16, Appendix, Exhibit A, Appendix Page Nos. 4-9, Appendix, Exhibit B, Appendix Page Nos. 10-16, Appendix, Exhibit B(1), Appendix Page Nos. 17-30, Appendix, Exhibit B(2), Appendix Page No. 31, and Appendix, Exhibit B(3), Appendix Page Nos. 32-39.

23.     In the instant case, as more fully discussed below, it would be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of Defendants' unlawful actions. Accordingly, Plaintiff elects to receive statutory damages.

24.     Because the statute defining statutory damage awards for violations of the Copyright Act of 1976, 17 U.S.C. § 101 et seq. (the "Copyright Act") is analogous to the Communications Act,[6] its case law is influential in analyzing the amount of statutory damages to which Plaintiff is entitled.[7]

25.     Applying the courts' analysis from their decisions under the Copyright Act, the lost income from the sale of the Event to Defendants' Establishment represents only a starting place for the determination of the amount of damages to which Plaintiff is entitled as a result of Defendants' wrongful acts.[8] Factors to consider in determining a statutory damage award include:

---

[6] 17 U.S.C. § 504(c)(1) provides as follows:

Statutory damages. (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

[7]According to the United States Supreme Court, when determining the applicable statutory damage award under the Copyright Act, the amount of profits lost by the copyright holder is not the only criteria for a Court to consider. *Woolworth*, 344 U.S. at 233. Rather, "a rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy". *Id*. at 233.

[8] *See*, e.g., *Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc*., 219 F.Supp.2d 769, 776 (S.D. Tex. 2002) ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the Event does nothing to accomplish this objective of the statute. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid.")(citations omitted).

(1) "the market value of the rights infringed", (2) "the revenue lost by the plaintiff and profits gained by the defendant," (3) "the infringers state of mind" and (4) "deterrence of future infringement." *See Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F.Supp. 1522, 1544 (S.D.N.Y. 1991).  For an establishment with an occupancy of 35 people, the sublicense fee would have been $2,200.00.  See Appendix, Exhibit B at ¶ 8, Appendix Page No. 12 and Appendix, Exhibit B(2), Appendix Page No. 31.

26.    Congress emphasized that these incidents threaten to undermine the satellite industry and adversely impact legitimate satellite dealers and satellite programmers who otherwise would be receiving payment for their programming or descrambling devices. *See Scott*, 783 F.Supp. 280, 281 (referencing 1988 U.S. Code Cong. & Admin. News 5577, 5642-43). Significantly, there are no countervailing social or policy considerations which justify the unauthorized interception of these broadcasts. *See ON/TV of Chicago v. Julien*, 763 F.2d 839, 843 (7th Cir. 1985); and *Subscription Television of Greater Washington v. Kaufman*, 606 F.Supp. 1540, 1544 (D.D.C. 1985).

27.    Plaintiff should receive additional compensation as it has been deprived of the "value, benefits, and profits derived" from the unauthorized broadcast of the Event to Defendants' Establishment and their patrons as well as the value of "business investment, business opportunities, reputation, and goodwill," in addition to the lost revenue which would have been derived from the delivery and exhibition of the Event to Defendants' Establishment and their patrons.  *See American Television and Communications Corp. v. Floken, Ltd.*, 629 F.Supp. 1462, 1466 (M.D.Fla. 1986).

28.     Types of damages suffered by Plaintiff and factors related to same include the following:

a.  Plaintiff loses customers, which are unwilling and financially unable to compete with those unauthorized commercial establishments, which steal sports and other closed-circuit programming.

b.  Because these unauthorized commercial establishments offer the stolen programming to their patrons for no fee or for a fee which is less than the authorized establishments, the legitimate commercial establishments with the right to broadcast closed-circuit programming attract less paying customers. As a result, the authorized commercial establishments fail to recover the sublicense fees paid, suffer the loss of patrons and/or incur financial loss.

c.  Theft of closed-circuit broadcasts such as the Event, by unauthorized commercial establishments such as Defendants' Establishment, adversely affects both Plaintiff and its customers. Plaintiff pays substantial fees to obtain the right to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. Plaintiff's primary source of revenue is the sublicense fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Event.

*See* Appendix, Exhibit B at ¶¶ 5, 12-14, Appendix Page Nos. 11, 14-15.

29.     Each visitor of Defendants' Establishment is lost as a future patron of authorized broadcasts. *See Cox Cable Cleveland Area, Inc. v. King*, 582 F.Supp. 376, 381 (E.D. Ohio 1983). Plaintiff suffers ongoing loss to its goodwill and reputation and loss of its right and ability to control and receive payment for the transmission, because patrons viewing the pirated event at Defendants' Establishment would have become patrons of an authorized establishment thereby increasing the value of the Event and Plaintiff's business opportunities. S*ee* Appendix, Exhibit B at ¶¶ 5, 12-14, Appendix Page Nos. 11, 14-15; *see also Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F.Supp. 1159, 1161 (D. Ma. 1986).

30.     After experiencing serious erosion in sales of its proprietary programming to Plaintiff's commercial customers resulting from rampant piracy of Plaintiff's broadcasts, Plaintiff took affirmative action to protect its proprietary programming. *See* Appendix, Exhibit B at ¶¶ 5-7, Appendix Page Nos. 11-12.  Domestic commercial establishments were required to pay Plaintiff a commercial sublicense fee to broadcast the Event.  *See* Appendix, Exhibit B at ¶ 8, Appendix Page No. 12 and Appendix, Exhibit B(2), Appendix Page No. 31.  The detrimental effects of signal piracy include the loss of revenue to Plaintiff, the increased costs to those lawful residential and commercial customers of cable and satellite broadcasting, and the loss of tax revenue to the communities where Plaintiff's potential customers reside. *See* Appendix, Exhibit B at ¶¶ 12-14, Appendix Page Nos. 14-15.

31.     Therefore, when an unauthorized commercial establishment intercepts, receives, and broadcasts closed-circuit programming such as the Event, Plaintiff's reputation and goodwill suffer from what is perceived as a lack of consequence.  *See Id*.  An incalculable element of damages is the ill-will and possible loss of future business from legitimate commercial establishments which refuse to pay sublicense fees because they cannot compete with unauthorized commercial establishments which steal closed-circuit programming such as the Event.  *See Id.*

32.     The continued viability of Plaintiff's business relies upon the willingness and ability of commercial establishments to pay sublicense fees for the right to broadcast closed-circuit sports and entertainment programming such as the Event. *See* Appendix, Exhibit B at ¶¶ 5, 12-14, Appendix Page Nos. 11, 14-15.  If such programming is made available to the public for no fee at unauthorized commercial establishments which have not purchased the right to broadcast such programming, commercial establishments will find no reason to purchase the right to legally broadcast this type of programming. *See Id.*

33.     Given the benefits which Defendants received from the broadcast of the Event and the types of damages Plaintiff suffered, it is fair and reasonable to assess damages against Defendants, jointly and severally, and award to Plaintiff statutory damages in the amount of $10,000.00.

### 3.     DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(E)(3)(C)(II)

34.     Plaintiff also requests damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) in light of Defendants' actions being willful and "for purposes of direct or indirect commercial advantage or private financial gain." In *ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985), the Court of Appeals for the Seventh Circuit interpreted willful under the Statute as "disregard for the governing statute and an indifference to its requirements." *Id.* at 844 (quoting *TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)).

35.     Defendants specifically and willfully acted to illegally intercept the transmissions of the Event for Defendants' commercial advantage, because Defendants could not have "innocently" accessed the broadcast of the Event.[9]   *See* Appendix, Exhibit B at ¶¶ 10-11, Appendix Page Nos. 13-14.

36.     Simply, the complexity of intercepting transmissions makes it impossible to mistakenly or "innocently" access the broadcast of the Event.   Defendants knew that it was wrong to receive, intercept, and divert the signal of the Event and to broadcast it in Defendants' commercial Establishment. *See KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F.Supp. 2d 438, 442 (S.D.N.Y. 2001); *see also Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999)(when finding willfulness the court stated, "there can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. *Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems*"(emphasis added). *See also KingVision Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. March 30, 2001)(Briones, D.)("While Defendants may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that *there must have been some knowledge on the part of Defendants* that such interception could not be had for free.")(emphasis added).

---

[9] *See Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001)(Nathaniel, K.)("The respective defendants elected not to enter into contracts with plaintiff to obtain the transmission of the Program. Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial establishment, would be: (a) using an illegal descrambler in a satellite receiver; (b) using a pirate cable box; (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to their commercial establishments. The Court finds that employing ***any one*** of these means to defraud plaintiff would be evidence of willfulness and would support an award of enhanced damages.")(emphasis added).

19

37.     Defendants' purpose and intent in exhibiting the Event were to secure a private financial gain and direct commercial advantage by pirating Plaintiff's licensed exhibition and infringing upon Plaintiff's rights while avoiding proper payment to Plaintiff. [10]

38.     Defendants owned and operated the Establishment on the night of the Event. *See* Doc. No. 1 at ¶¶ 2-3 and Appendix, Exhibit A, Appendix Page Nos. 4-9. On the night of the Event, the Establishment, with an established storefront, had an active Sales, Excise, and Use Tax Permit for the sale of hookah and smoking accessories while patrons watched the Event. *See* Appendix, Exhibit A, Appendix Page Nos. 4-9 and Appendix, Exhibit B(3), Appendix Page Nos. 32-39. Given the above, Defendants' actions were clearly willful and for a commercial advantage warranting additional damages under the Communications Act.

39.     Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize Defendants for willful acts.[11]  Plaintiff requests that this Court hold Defendants accountable for a substantial amount; otherwise, other commercial establishments "would be encouraged to violate the law knowing the full extent of their liability would not exceed what they would have to pay for a license on the open market." *See Fallici v. New Gazette Literary Corp.*, 568 F.Supp. 1172, 1174 (S.D.N.Y. 1983).  The award of additional damages should be significant to deter Defendants and other unauthorized commercial establishments from stealing protected communications.

---

[10] *See J&J Sports Productions, Inc. v. Papagallos 1, Inc.*, Civil Action No. A-08-CA-691-SS (W.D.Tex. April 17, 2009) (Sparks, S.)(Order)(Doc. No. 13)("The undisputed evidence establishes the Event was broadcast to paying customers of Defendant's commercial establishment and thus the violation was for commercial advantage or private gain.").

[11] *See* e.g., *Lauratex*, 519 F.Supp. at 733 (increase of seven times the actual damages for willful acts); *Cable/Home*, 902 F.2d 829 (additional damages of five times actual damages for  willful conduct); and *Entertainment by J&J, Inc.*, 219 F.Supp.2d at 777 (S.D. Tex. 2002)(the court awarded three times statutory damages for willful violations).

40.    Therefore, pursuant to Section 605(e)(3)(C)(ii), in addition to the reasons set forth above, the minimum amount of Fifty Thousand Dollars ($50,000.00) (or five times (5) the amount of statutory damages, if $10,000.00 in statutory damages awarded) should be awarded to Plaintiff. The following authority also supports an award of additional damages:

    a.    To deter future pirating of cable and satellite broadcasts. *See*, e.g., *KingVision Pay-Per-View, Ltd. v. Scott E.'s Pub, Inc.*, 146 F.Supp.2d 955, 959-60 (E.D.Wis. 2001) (discussing multipliers of three to eight (3 to 8) times the statutory damages as additional damages in order to deter future communication theft).

    b.    To deter actions involving theft, fraud, and conversion. *See Entertainment by J&J, Inc. v. Tia Maria Mexican Restaurant & Cantina, Inc.*, 97 F.Supp. 2d 775, 778-779 (S.D. Tex. 2000)(Gilmore, V.)("[a] suit for illegal reception and broadcast of a cable signal implicates several areas of the law [including fraud and theft].”); and *ProStar v. Massachi*, 239 F.3d 669, 675 (5th Cir. 2001)(analogizes violation under Communications Act to conversion).

### F. ATTORNEY'S FEES AND COSTS

41.    Plaintiff requests an award of attorney's fees and costs pursuant to 605(e)(3)(B)(iii). Under Section 605(e)(3)(B)(iii), the award of attorney's fees is mandatory.  According to Section 605(e)(3)(B)(iii), "[t]he Court... shall direct the recovery of full costs, including awarding reasonable attorneys' fees..."

42.    Plaintiff seeks an attorney's fees award for the prosecution of this action through the final default judgment requested. *See* Appendix, Exhibit C, Appendix Page Nos. 40-43.  In addition, Plaintiff seeks an award of costs, which costs have been proven by affidavit with the attached service of process invoices.  *See* Appendix, Exhibit C at ¶ 8, Appendix Page No. 42 and Appendix, Exhibit C(1), Appendix Page Nos. 44-45.

### G. CONCLUSION

43.    In conclusion, the averments that Defendants, willfully and for purposes of direct

or indirect commercial advantage or private financial gain, illegally intercepted the closed-circuit telecast of the Event, and that Defendants exhibited the Event in Defendants' commercial Establishment without authorization and without paying the licensing fee to Plaintiff are deemed admitted and supported by evidence. *See* Plaintiff's Complaint, Doc. No. 1 and the exhibits attached to the accompanying Appendix.

44.     Accordingly, pursuant to the Communications Act and the statutory damages permitted thereunder, Plaintiff seeks the entry of a final default judgment in favor of Plaintiff and against Defendants for the relief sought in this Motion.

## H. PRAYER

Plaintiff respectfully requests that the Court sign and cause to be entered a final default judgment in favor of Plaintiff, JOE HAND PROMOTIONS, INC. and against Defendants, S H MAKANI ENTERPRISE, INC., d/b/a ANTILLA SMOKE SHOP & LOUNGE and VICTORIA CASTELLANOS, a/k/a VICTORIA KEELEY, awarding Plaintiff:

(1)     Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants, jointly and severally, in the amount of $10,000.00; and

(2)     Additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants, jointly and severally, in the amount of $50,000.00; and

(3)     Attorney's fees from Defendants, jointly and severally, in the amount of the hourly time presented in the Affidavit for Attorney's Fees and Costs (for prosecution of this case through the final default judgment) along with attorney's fees for post-trial or appellate services;

(4)     Costs from Defendants, jointly and severally, in the amount of $880.00; and

(5)     Post-judgment interest at the highest lawful rate; and

(6)      Such other and further relief to which Plaintiff is entitled.

Respectfully submitted,

JAMIE KING, P.C.

*/s/ Jamie King*
Jamie King
Attorney-in-Charge
State Bar No. 24043755
P.O. Box 5757
Kingwood, Texas 77325
(832) 584-0106 Telephone
(888) 247-0443 Facsimile
Jamie@jamiekingpc.com

ATTORNEY FOR PLAINTIFF,
JOE HAND PROMOTIONS, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 17th day of May, 2017, true and correct

copies of the foregoing were served as follows:

*Via U.S. Mail, Postage Prepaid and Certified Mail, Return Receipt Requested upon*:

| | |
|---|---|
| S H Makani Enterprise, Inc., d/b/a Antilla Smoke Shop & Lounge Attn:  Victoria Castellanos 3261 N. Beach Street Fort Worth, Texas 76111 | S H Makani Enterprise, Inc., d/b/a Antilla Smoke Shop & Lounge 5053 Heritage Oaks Dr. Colleyville, Texas 76034 |
| Victoria Castellanos, a/k/a Victoria Keeley 5721 Frio Dr. Haltom City, Texas 76137 | Victoria Castellanos, a/k/a Victoria Keeley 4312 Joy Lee St. Haltom City, Texas 76117 |
| Victoria Castellanos, a/k/a Victoria Keeley 2803 Oscar Ave. Fort Worth, Texas 76106 | |

*/s/ Jamie King*                                        5/17/17
Jamie King                                               Date

23